**IN THE COURT OF APPEALS OF IOWA**

No. 24-1778
Filed March 5, 2025

**IN THE INTEREST OF D.M., S.M., and F.M.,**
**Minor Children,**

**D.M., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Marshall County, Paul G. Crawford, Judge.

The father appeals the termination of his parental rights. **AFFIRMED.**

Merrill C. Swartz of Swartz Law Firm, Marshalltown, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Mary Cowdrey of Public Defender's Office, Marshalltown, attorney and guardian ad litem for minor children.

Considered by Tabor, C.J., Schumacher, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**POTTERFIELD, Senior Judge.**

The juvenile court terminated the father's parental rights to F.M., born in 2016; D.M., born in 2018; and S.M., born in 2018, pursuant to Iowa Code section 232.116(1)(f) (2024). On appeal, the father concedes the statutory ground for termination was proved. He argues it is in the children's best interests to give him six more months to work toward reunification with the children, who had been returned to the mother's custody. Alternatively, he asks us to apply the permissive factor in section 232.116(3)(a) to save the parent-child relationships.

We review the termination of parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

The juvenile court may "give the parent an additional six months for reunification only if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). It is up to the parent to show "the impediments to placing" the children with them "will not exist in six months." *Id.* And, to give the parent more time, we must also conclude the delay in permanency is in the children's best interests. *Id.* In making our best-interests determination, we rely on section 232.116(2). *See id.* It requires us to "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

Here, more than twenty months elapsed between the time the Iowa Department of Health and Human Services became involved with the family and the final day of the termination trial in September 2024.[1]  Department involvement began in December 2022 after the father strangled the mother while the children were present in the home.  There were also concerns the father was using methamphetamine and had unaddressed mental-health needs.

The father was in and out of jail during the department's involvement with the family.  Despite juvenile court orders, he never obtained mental-health and substance-use evaluations or participated in drug testing.  He also never addressed his perpetration of domestic violence.[2]  During his testimony at the termination trial, the father admitted he was an alcoholic and stated he recently began attending monthly Alcoholics Anonymous meetings.  He denied using methamphetamine in the last ten years even though he was charged with possessing drug paraphernalia and methamphetamine in June 2024 and admitted the drug was found in his vehicle (the father suggested it was planted).  While there was evidence he engaged in some unapproved interactions with the children while they were at the home of the paternal great grandmother, the father failed to attend any supervised visits from February 2024 up to the close of the termination trial.  During that window, he was generally disengaged—the case manager and family

---

[1] The termination trial took place over three dates: July 9, August 13, and September 4, 2024.

[2] During his testimony, the father maintained he "never hurt [the mother] to begin with."  He agreed he has criminal convictions for domestic violence with the mother as the named victim, but he claimed that, in reality, he was the victim of the mother's violent actions and only took the blame to ensure the mother did not go to prison.  In the written termination order, the juvenile court specifically found these statements lacked credibility.

support specialist struggled to contact him, and he did not take any steps to comply with the case plan. The father was in no better a position to resume custody in September 2024 than he was at the time of the children's formal removal in May 2023; he had pending criminal charges, was being held in jail, and could not say when (or if) he would be released.

The father testified that he was "owning up to [his] mistake and trying to get [him]self together and fixed and work towards a better—to better [him]self not only for [him] but also for [his] kids." And the children's great grandmother—a mother figure to the father—recognized the father's new mindset; she asked the court to give the father more time, testifying, "Just in the last few weeks he has tried, two weeks maybe, or three. . . . [Since being jailed] he made a choice that he wanted to get his life back." We hope the father can sustain positive changes in his life. But he made no progress during the nearly sixteen months the children were formally removed from his care and—because of his disengagement—it was unclear what services or help he would need before he would be in the position to resume custody. We cannot conclude the need for removal would no longer exist if the father was given six more months to work toward reunification.

While the children were formally removed from both parents' custody in May 2023, they were returned to the mother with juvenile court approval about five months later. Pointing to section 232.116(3)(a), which allows the court to forgo termination when "[a] relative has legal custody of the child[ren]," the father argues there is no need to terminate his rights; he asks us to save the parent-child relationships. As the father recognizes, after the State proves a ground for termination, the parent resisting termination bears the burden to establish a

permissive factor in section 232.116(3). *In re A.S.,* 906 N.W.2d 467, 476 (Iowa 2018). The factors in section 232.116(3) "are permissive, not mandatory," and we may use our discretion, "based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.,* 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). The juvenile court refused to apply a permissive factor, reasoning: "The fact that the children are in mother's custody is based on father's history of domestic violence towards her. That does not score him points towards applying an exception to termination of his parental right." We agree. Despite his protestations otherwise, the record shows the father has a history of perpetrating domestic violence on the mother. He has not taken any steps to address that behavior. We share the department case manager's concern that, if allowed to retain his rights without any department or court oversight, the father may attempt to use the children to exert control over the mother. And, considering the power dynamic in the mother and father's relationship, we decline to exercise our discretion to apply a permissive factor when it would then be the mother's burden to protect the children from a co-equal parent with unmet substance-use and mental-health needs.

Because we cannot conclude the need for removal would no longer exist in six months and decline to apply a permissive factor to save the parent-child relationships, we affirm the termination of the father's parental rights.

**AFFIRMED.**